IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| NUTRACEUTICAL CORP., a Delaware corporation, and NUTRAMARKS, INC., a Delaware corporation,<br><br>       *Plaintiffs and Counterclaim Defendants*,<br><br>v.<br><br>AFFORDABLE NATURALS, LLC, a Minnesota limited liability company,<br><br>       *Defendant and Counterclaim Plaintiff*. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:14-cv-00907-JNP-PMW<br><br>Judge Jill N. Parrish<br>Magistrate Judge Paul M. Warner |

Before the Court is Defendant's Motion for Partial Summary Judgment (ECF No. 53). Having considered the motion, the related pleadings, and the record, the Court GRANTS the motion.

## I.     INTRODUCTION

Plaintiffs and Counterclaim Defendants Nutraceutical Corporation and NutraMark, Inc. (collectively, "Nutraceutical") brought claims against Defendant and Counterclaim Plaintiff Affordable Naturals, LLC ("AN") for (1) trademark infringement, (2) false advertising, (3) declaratory relief, and (4) trademark cancellation. In response, AN brought a single counterclaim seeking a declaration that it does not infringe and has not infringed any Nutraceutical trademark. This dispute arises from AN's use of the SIMPLY mark in connection with lip balms and other lip products and Nutraceutical's use of the SIMPLERS BOTANICALS and SIMPLERS marks in connection with essential oils. Nutraceutical claims that AN's use of the SIMPLY mark infringes the SIMPLERS mark. AN has moved for partial summary judgment, arguing that no reasonable

juror could conclude that there is a likelihood of confusion. The Court agrees and holds that AN is entitled to judgment in its favor on all four of Nutraceutical's claims.

## II.         UNDISPUTED FACTS

### A.    Affordable Naturals' SIMPLY Mark

AN sells lip-related personal care products, such as lip balms, lip shimmers, and lip glosses. AN's products are made with natural and organic ingredients, including olive oil and beeswax, and its mission is "to bring organic products back down-to-earth [sic] by providing the first all-natural, premium quality, U.S.-made eco-conscious personal-care products offered on the market at a reasonable rate." AN maintains certain standards to ensure that its goods qualify for USDA Organic certification.

AN owns the SIMPLY mark and has sold millions of products bearing the SIMPLY mark in interstate commerce since as early as August 1, 2009. The SIMPLY mark is registered with the United States Patent and Trademark Office ("USPTO") for personal care products, namely lip balms, lip glosses, lip shimmers, and other lip-related products. Reg. No. 3,935,337. AN applied for registration of its SIMPLY mark under § 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), as an Intent-to-Use application on November 24, 2009. AN then filed a "Statement of Use" for the SIMPLY mark on December, 8, 2010. The USPTO registered AN's SIMPLY mark on the Principal Register on March 22, 2011, creating a constructive-use date of November 24, 2009.

Paul Henson, a consultant for AN, first had the idea to use the SIMPLY mark in connection with AN's products. He chose SIMPLY because he "wanted a name that would sort of connote the concept of [a] brand with simple ingredients." Henson also chose the mark because he "notice[d] there were no products in the [lip-care] category with the name Simply."

AN markets and sells its products with the philosophy that quality goods can be affordable to consumers. AN sells its products online and through various distribution relationships with national retailers, including stores like Walgreens and Target. In stores, SIMPLY-branded products are usually found at end-cap displays and check-out aisles. AN targets impulse buyers, those who make purchases on a whim, and label readers, those who check the ingredients and compare prices when deciding to buy. The suggested retail price for SIMPLY-branded products ranges from $0.99 to about $2.99, with lip balms generally having a lower suggested retail price than lip shimmers or lip glosses.

**B.      Nutraceutical's SIMPLERS BOTANICALS and SIMPLERS Marks**

Nutraceutical is not the original holder of the SIMPLERS BOTANICALS and SIMPLERS marks. Since approximately September 1, 1983, Simplers Botanicals, LLC purportedly used "simplers" in connection with the sale of essential oils. On August 7, 2013, Nutraceutical acquired Simplers Botanicals along with its intellectual property, including any purported rights in the SIMPLERS and SIMPLERS BOTANICALS marks. While there is some evidence that Simplers Botanicals sold products bearing only the word SIMPLERS before it was acquired, all of Nutraceutical's current products bear the words SIMPLERS BOTANICALS.[1]

Nutraceutical sells essential oils and blends of essential oils. According to Robin Lander, Nutraceutical's brand manager, an essential oil is an oil essential to plants that can be extracted and used for various purposes. Lander suggests that there is virtually no limit on how essential oils can be used: consumers can inhale them, use them in compresses, use them as perfumes, use

---

[1] At oral argument, Nutraceutical admitted that it has not used the word SIMPLERS by itself since sometime around 2010. For this reason, the Court refers to Nutraceutical products as SIMPLERS BOTANICALS-branded products, as it is more accurate than SIMPLERS-branded products.

them as massage oils, use them to treat urinary tract infections, and even use them to "increase sexual pleasure."

Lander previously worked as Simpler Botanicals' national sales manager starting in 2007. During her tenure with both Simplers Botanicals and Nutraceutical, neither sold a lip product that was similar to Blistex or a lip product that "comes in a tube." Likewise, neither company has sold a lip salve (a lip product with a wax base) under the SIMPLERS or SIMPLERS BOTANICALS marks. To date, Nutraceutical does not sell "mixtures of oils and waxes together," and it has never sold a product labeled as a "cream."

Nutraceutical markets its products for therapeutic uses, including aromatherapy. For instance, Nutraceutical advertises its products in an Aromatherapy Guide, which it distributes to teachers of massage, acupuncture, and naturopathic medicine. According to Lander, "there's literally hundreds" of practitioners who use Nutraceutical's essential oils in their practice.

Nutraceutical, according to Lander, has a number of products in development, including soaps, creams, powders, and blends of essential oils. Lander is "always coming up with ideas," but when pressed for specifics by AN's attorney, she stated, "I don't want to tell you, you know, that is all." Sometime in 2011, Lander considered "creating a Simplers product that would be a wax consistency lip product," but Nutraceutical does not currently have a lip balm, lip shimmer, or lip gloss in the planning stage of development. According to Lander, if someone wanted to create a "waxy-type lip balm" with Nutraceutical's products, they would need to "buy from somewhere else a bees wax or soy wax or similar type of wax."

Before it was acquired, Simplers Botanicals sold a lip product called "Herp Aid," which supposedly treated cold sores and herpes sores. Nutraceutical now sells the same product under the name "Lip Clarity." Nutraceutical uses the SIMPLERS BOTANICALS mark on the Lip

Clarity packaging. Lip Clarity, like the majority of Nutraceutical's products, is an essential oil that is similar in consistency to a liquid—if a consumer broke a bottle of it, it would "splash everywhere." Lip Clarity can be applied directly on the lips, but Nutraceutical recommends that its users mix Lip Clarity with a "carrier oil," such as lavender. As Lander explained:

> If [someone] had a particularly painful sore on the lips or genital area, they might find the tingling sensation of the product a little too strong. They could put [Lip Clarity] in a little bit of carrier oil or lotion or even an existing lip product they had. They could make a salve or lip balm and put some in it. And then they could use that on the genitals or the lips to help, you know, alleviate that pain of application.

According to Lander, "[s]omeone might not want to be seen carrying around a bottle of Herp Aid or Lip Clarity," so "they could make it into a lip balm or something of a waxy consistency that they can more inconspicuously apply to their lips." Lander has seen cases where people with cold sores covering their face or genitals "put the Herp Aid or Lip Clarity into a lotion that they purchased or a carrier oil that they purchased so they can massage it over a larger area of the face [or genitals]."

A five-milliliter bottle (or about one teaspoon) of Lip Clarity is available on Nutraceutical's website for $13.19. Lip Clarity is also available online at Walmart for $11.21, eBay for $9.70, and Amazon for $7.39. Other products in the SIMPLERS BOTANCIALS line, such as Jojoba Oil, cost as little as $7.39. Nutraceutical's SIMPLER BOTANICALS-branded products are also sold in several national chains, including Whole Foods Market, Earth Fare, and Vitamin Shoppe. Nutraceutical, according to Lander, recommends that retail stores put its products "with their other aromatherapy products or near fragranced products, or [it] might ask [the stores] to put the Herp Aid next to other lip products." Sometimes retailers "ke[ep] everything Simplers all together, like in one area."

On September 30, 2013, Nutraceutical filed a § 1(a) trademark application, 15 U.S.C. § 1051(a), with the USPTO for actual use in commerce of the SIMPLERS mark for two classes of goods. For the first class of goods (international class 003 for cosmetics and cleaning preparations), Nutraceutical identified the following goods for which it was purportedly using the SIMPLERS mark in commerce:

> [C]osmetic preparations, namely, essential oils for personal use and aromatherapy use; perfume oils, non-medicated cosmetics and skin care products, namely, face and body creams, face, **body and lip salves**, face and body sprays, face and body balms, face and body oils, face and body liquid soaps, face and body moisturizers, face, body, and hand lotions, **lip balms**, shaving lotions, shaving balms, perfumes and colognes, and face and body bar soaps; hair care preparations; massage oils[.]

(emphasis added). In the second class of goods (international class 005 for pharmaceuticals and dietetic substances adapted for medical use), Nutraceutical identified the following goods for which it was purportedly using the SIMPLERS mark in commerce:

> Dietary and nutritional supplements; herbal products, namely, herbal supplements and medicinal herbal extracts sold as a component ingredient of dietary and nutritional supplements, and liquid herbal supplements sold as a component ingredient of dietary and nutritional supplements that aid in sleep, relaxation and wellness[.]

The USPTO has not registered the SIMPLERS mark on the Principal Register.

On September 20, 2013, Nutraceutical also filed a § 1(a) trademark application with the USPTO for actual use in commerce of the SIMPLERS BOTANICALS mark for two classes of goods. Nutraceutical registered the SIMPLERS BOTANICALS mark for the same international classes of goods as the SIMPLERS mark, and it identified the same goods for which it purportedly uses the SIMPLERS BOTANICALS mark in commerce as it purports to use the SIMPLERS mark. Nutraceutical disclaimed the exclusive rights to the word BOTANICALS in the SIMPLERS BOTANICALS mark, apart from the mark as shown in its registration. The

USPTO registered Nutraceutical's SIMPLERS BOTANICALS mark on December 2, 2014, creating a constructive first-use date of September 1, 1983.

Nutraceutical's actual use of the SIMPLERS and SIMPLERS BOTANICALS marks is not consistent with its trademark applications. When asked about specific categories of goods, Jeffery Hinrichs, Nutraceutical's COO and Executive Vice President, admitted that the company does not sell any products other than those in essential-oil form. For instance, Hinrichs admitted that Nutraceutical does not sell soap, bar soap, shaving cream, or hair-care products—all classes of goods listed in the applications for both the SIMPLERS and SIMPLERS BOTANICALS marks.

There is no evidence of actual consumer confusion based on AN's use of the SIMPLY mark. Lander knows of no specific instances where a consumer confused SIMPLY-branded products with Nutraceutical's products. In fact, after fielding "thousands" of inquiries from consumers, Lander does not "recall anybody referencing Simply products." Nutraceutical also has not surveyed consumers to find evidence of actual confusion.

Nutraceutical does not explain why Simpler Botanicals adopted the SIMPLERS or SIMPLERS BOTANICALS marks. Nutraceutical also has not conducted any surveys to determine how consumers perceive the marks in question, and it does not have any evidence as to whether the parties' products compete in the marketplace. For instance, there is no evidence that consumers go into a store looking for essential oils and walk out with SIMPLY-branded products instead of essential oils. Nutraceutical merely speculates that the parties' products compete because both parties use terms like "natural" and "organic" to attract consumers searching for those qualities.

## C.       Procedural Background

In the course of policing its registered SIMPLY mark, AN became aware of Nutraceutical's attempt to register the SIMPLERS mark. AN instituted an Opposition Action against Nutraceutical with the USPTO's Trademark Trial and Appeal Board ("TTAB"), Proceeding No. 91218720, on October 7, 2014. There, AN alleged that Nutraceutical should be precluded from registering the SIMPLERS mark under § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), because of the SIMPLY mark. In its Notice of Opposition, and in response to Nutraceutical's overbroad registration statement, AN claimed that the SIMPLERS mark resembles the SIMPLY mark such that it would be "likely to cause confusion, mistake or deception."

Nutraceutical then commenced this action, despite the pending Opposition Action, claiming that AN's use of the SIMPLY mark infringed the SIMPLERS mark. Nutraceutical did not initially claim that AN had infringed the SIMPLERS BOTANICALS mark, but both parties agreed, at oral argument, that Nutraceutical's rights in the SIMPLERS mark flow from its use of the SIMPLERS BOTANICALS mark. On December 3, 2015, despite the ongoing nature of this action, Nutraceutical initiated a Cancellation Proceeding against AN before the TTAB, Proceeding No. 92-62793, claiming that AN's SIMPLY mark should be cancelled because its use is likely to give rise to consumer confusion. Now, AN has moved for partial summary judgment, claiming that no reasonable juror could find that there is a likelihood of confusion as to the source and sponsorship of the parties' products based on its use of the SIMPLY mark.

## III.    DISCUSSION

### A.    Motion Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant, AN, bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When the nonmoving party bears the burden of proof at trial on a dispositive issue, as Nutraceutical does, that party must "go beyond the pleadings" and "designate specific facts" so as to "make a showing sufficient to establish the existence of an essential element to that party's case." *Celotex*, 477 U.S. at 322. "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* Thus, summary judgment is not a "disfavored procedural shortcut" but rather "an integral part of the Federal Rules as a whole" that is designed "to secure the just, speedy and inexpensive determination of every action." *Id.*

### B.    Trademark Infringement Under § 43(a) of the Lanham Act

Congress has defined a trademark as "any word, name, symbol, or device, or any combination thereof . . . to identify and distinguish his or her goods, including a unique product,

from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. To prevail on each of its claims—trademark infringement, false advertising, declaratory relief, and trademark cancellation—Nutraceutical must prove that AN infringed the SIMPLERS mark, as it is used by Nutraceutical. To establish trademark infringement under § 43(a) of the Lanham Act, Nutraceutical must prove: (1) that it had a protectable interest in the SIMPLERS mark; (2) that AN used an identical or similar mark in commerce; and (3) that AN's alleged use of the SIMPLY mark is likely to cause consumer confusion. *1-800 Contacts, Inc. v. Lens.Com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013); *see also* § 1125(a). The third element is at issue here.[2]

### 1)       Likelihood of Confusion

AN contends that, based on the undisputed facts, no reasonable juror could conclude that its use of the SIMPLY mark is likely to give rise to consumer confusion. Nutraceutical argues that likelihood of confusion is a question of fact that should be left to the jury based on the similarities between SIMPLY and SIMPLERS. The Court, however, is unconvinced that a reasonable juror could conclude that AN's use of the SIMPLY mark is likely to give rise to consumer confusion and therefore grants AN's motion.

Although likelihood of confusion is a question of fact, it is amenable to summary judgment in certain cases, such as this one, because "[c]ourts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination of whether there is a likelihood of confusion." *King of the Mt. Sports, Inc.*

---

[2] AN originally argued that Nutraceutical did not have a protectable interest in the SIMPLERS mark. However, at oral argument, AN conceded that argument and asked the Court to decide only whether AN's use of the SIMPLY mark is likely to cause consumer confusion. Thus, the Court assumes that Nutraceutical has a protected interest in the SIMPLERS mark for the purposes of this case.

*v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999) (quoting *Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527, 1530 n.2 (10th Cir. 1994)).

To evaluate whether a likelihood of consumer confusion exists, the Court examines the following non-exhaustive factors: (1) evidence of actual confusion between the marks, (2) the degree of similarity between the marks, (3) the similarity of the parties' goods and the manner in which they are marketed, (4) the degree of care consumers are likely to exercise in purchasing those goods, (5) the strength of the SIMPLERS mark, and (6) the intent of AN in adopting the SIMPLY mark. *Vail Assoc's v. Vend-Tel-Co.*, 516 F.3d 853, 863 (10th Cir. 2008). The factors are related, but no one factor is dispositive. *King of the Mt. Sports*, 185 F.3d at 1090. And the weight given to each factor depends on the facts and circumstances of the case. *Id.*

### a. Actual Confusion

"[E]vidence of actual confusion in the marketplace may be the best indication of likelihood of confusion." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 974 (10th Cir. 2002). Such evidence may be introduced through surveys. *Id.* When evidence of actual confusion is anecdotal, such as "seven examples of actual confusion," it is considered *de minimis* and does not support a likelihood of confusion. *King of the Mt. Sports*, 185 F.3d at 1092-93. Moreover, the Tenth Circuit has affirmed a district court's grant of summary judgment on the issue of likelihood of confusion when the evidence of actual confusion was *de minimis* and the marks in question were dissimilar. *Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527, 1535 (10th Cir. 1994).[3]

Here, despite significant discovery, Nutraceutical has no evidence of actual confusion. Lander, Nutraceutical's brand manager, fielded "thousands" of inquiries from consumers and

---

[3] *See also Port-a-Pour, Inc. v. Peak Innovation, Inc.*, No. 13-CV-01511-WYD-NYW, 2015 WL 558702, at *5 (D. Colo. Feb. 10, 2015) (holding that plaintiff was not entitled to summary judgment on trademark infringement claim because there were only "isolated instances of actual confusion").

admits that she does not know of any instance where a consumer mistook a SIMPLY-branded product for a Nutraceutical product. In fact, she does not remember anyone asking about SIMPLY-branded products. Nutraceutical also has no survey data showing actual confusion. The complete lack of evidence of actual confusion strongly suggests that there is no genuine dispute as to likelihood of confusion. *See id.* at 1535 (affirming the district court's grant of summary judgment on trademark infringement claim based, in part, on a "preliminary showing of no significant actual confusion in the marketplace").

### b. Similarity of Marks

The Court must determine "whether the allegedly infringing mark will confuse the public when singly presented." *Sally Beauty Co.*, 304 F.3d at 972. In confusion as to source and sponsorship cases, such as this one, the similarity of the marks is at the heart of the Court's analysis. *King of the Mt. Sports*, 185 F.3d at 1090; *see also Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 558 (10th Cir. 1998) (recognizing that the key inquiry in a source confusion case is "whether the consumer is 'likely to be deceived or confused by the similarity of the marks.'" (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992)).

Marks are confusingly similar when they look or sound similar, or convey the same idea or meaning. *Sally Beauty Co.*, 304 F.3d at 972. As such, "[t]he degree of similarity between marks rests on sight, sound, and meaning." *Id.* These factors are considered in the context of the mark as a whole, not in isolation, and similarities are given more weight than differences. *King of the Mt. Sports*, 185 F.3d at 1090. Furthermore, "marks must be compared in light of what occurs in the marketplace, not in the courtroom." *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir. 1983). For instance, "[c]onflicting marks consisting of both words and

pictorial symbols must be compared in their *entireties* to determine likelihood of confusion." 4 J.

Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:47 (4th ed. 2017).

In *King of the Mountain Sports*, logos that both used "king of the mountain" as the dominant portion of their logos were not confusingly similar because the "sight and sense of meaning invoked" by the logos differed dramatically. *King of the Mt. Sports*, 185 F.3d at 1090-91. The plaintiff's logo was stylized in Gothic lettering with only the first letter of "King" and "Mountain" capitalized, displayed against a solitary mountain ridge outline. *Id.* at 1091. The plaintiff's logo also used camouflage colors, consistent with the plaintiff's marketing toward hunters. *Id.* In contrast, the defendant's logo was colorful, consisted of bold capitals, and the words were vertically oriented. *Id.* While both logos incorporated a mountain background, the mountains were shaped differently. *Id.* Accordingly, the court found that no reasonable juror could find that the logos were similar. *Id.* at 1090.

In a similar case, the Tenth Circuit held that "Generic Value Products" was not similar to GENERIX. *Sally Beauty Co.*, 304 F.3d at 972-73. One mark consisted of three words, the other mark only one. *Id.* at 972. Moreover, the sound of the marks was different: Generic Value Products did not sound like GENERIX. *Id.* at 973. The court noted that the marks conveyed a similar meaning—that the products were inexpensive—but this was insufficient to conclude that a reasonable jury could find that the marks were similar. *Id.* The court also held that the district court erred when it shortened Generic Value Product to Generic to compare the aural similarities between the marks. *Id.*

Nutraceutical contends that the marks in this case are similar because they share the same root word—simple—and differ only with respect to the end syllables—"y" versus "ers." AN

argues that the marks are dissimilar because they sound different, have different meanings, and have different visual appearance. The Court agrees with AN.

As an initial matter, the Court analyzes the similarity of marks based on how they appear in the marketplace. *See Beer Nuts*, 711 F.2d at 941. Nutraceutical admits that all of its products currently bear the SIMPLERS BOTANICALS mark and that SIMPLERS was not used in isolation since sometime around 2010 when Simplers Botanicals purportedly owned both marks. Thus, the Court does not compare SIMPLY to SIMPLERS, rather it compares SIMPLY to SIMPLERS BOTANICALS, because that is how the marks appear in the marketplace.[4]

First, SIMPLY does not sound like SIMPLERS BOTANICALS. Like *Sally Beauty Co.*, in which one mark was one word (GENERIX) and the other mark three (Generic Value Product), SIMPLY is a one-word mark while SIMPLERS BOTANICALS is a two-word mark. Moreover, the dissimilarity in sound as to SIMPLERS and SIMPLY, the first words of each mark, is greater than the dissimilarity in sound as to Generic and GENERIX, the first words of the marks at issue in *Sally Beauty Co.* Even when the Court compares SIMPLY to SIMPLERS, there are differences in sound. SIMPLY is a two-syllable word that does not have the same phonetic pronunciation as SIMPLERS. The exact pronunciation of SIMPLERS is unclear based, in part, on the fact that it does not exist in the English language. And Nutraceutical has not put forth evidence as to how the average person pronounces SIMPLERS or its origins.[5] Accordingly, the Court concludes that SIMPLY does not sound like SIMPLERS BOTANICALS.

---

[4] *See also Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed. Cir. 1983) ("[I]t is well settled that the disclaimed material still forms a part of the mark and cannot be ignored in determining likelihood of confusion.").

[5] In the Court's view, SIMPLERS could be either a two- or three-syllable word based on how one chooses to pronounce it. Nutraceutical did not address this issue in its Opposition.

Second, the marks are not similar in meaning. Simply, according to *Merriam Webster*, is an adverb meaning "without ambiguity" or "without embellishment." Simple, according to *Merriam Webster*, is an adjective that refers to something "not hard to understand or do; having few parts; not complex or fancy; not special or unusual." While simpler is a variation of simple often used to compare something simple to something more complex, it is unclear that SIMPLERS carries a similar meaning. The meaning of SIMPLERS is further complicated because it is followed by BOTANICALS. Nutraceutical speculates that the mark is supposed to convey the idea that its products are made from simple ingredients, but it has no evidence as to who came up with the mark or what consumers associate with it. Thus, while SIMPLY conveys the meaning of products made simply, or with simple ingredients, SIMPLERS BOTANICALS does not convey, at least in an effective manner, a similar meaning.[6]

Third, the visual appearance of both marks is notably different. The SIMPLY mark uses a stylized green leaf for the "i," is presented mostly in lowercase letters, and includes a green font against a white backdrop. Moreover, the SIMPLY mark is vertically oriented and the letters in the SIMPLY mark are displayed in a *serif* font. In contrast, Nutraceutical's SIMPLERS mark currently appears atop the word BOTANICALS, is presented in all capital letters, and incorporates a line that separates the two words but connects the "r" in simplers with the "o" in botanicals. SIMPLERS BOTANICALS is presented horizontally, and the letters are in a *sans serif* font. Although both parties' marks sometimes appear on products with similar color schemes, the color of the SIMPLY mark varies based on the color scheme while the SIMPLERS BOTANICALS mark, as used on products, appears in a black font. The visual difference between the marks is similar to that in *King of the Mountain Sports*, in which the logos were in

---

[6] *Cf. Sally Beauty*, 304 F.3d at 972-73 (holding that GENERIX conveyed a similar meaning as Generic Value Product, the idea that both products are inexpensive).

different fonts and displayed against different backgrounds. *Cf. King of the Mt. Sports*, 185 F.3d at 1087-88.

 







The Court finds that no reasonable juror could conclude that the SIMPLERS mark, as it is used in the marketplace, is similar to the SIMPLY mark, weighing heavily against a likelihood of confusion. *See Universal Money Ctrs.*, 22 F.3d at 1531 (holding that marks were dissimilar because company "never use[d] the UNIVERSAL mark alone, but always use[d] it with 'MONEY,'" unlike the other mark in question).

### c. Similarity of the Products

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Id.* at 1532 (quoting *Exxon Corp. v. Texas Motor Exch.*, 628 F.2d 500, 505 (5th Cir. 1980)). The Tenth Circuit has analyzed this factor by separately considering (1) the similarity of the products and (2) the similarity in the marketing of the products. *Id.* at 1532-33. In analyzing the similarity in marketing, the Tenth Circuit has looked to "whether the parties were competitors in consumer markets." *Sally Beauty Co.*, 304 F.3d at 974. For instance, products were similar when the parties sold salon products "through similar commercial channels to the same retail market." *Id.*

Nutraceutical claims that the parties' products have "identical and related uses." Specifically, Nutraceutical claims that the distinction between "hard, waxy lip care product[s]," like AN's lip balms, and "liquid, oil-based lip care products," like Lip Clarity, is trivial. But the Court is not convinced. Indeed, the only thing that the parties' products have in common is that they can be applied to the lips.

First, as to the similarity between the products, SIMPLERS BOTANICALS-branded products, including Lip Clarity, are not similar to SIMPLY-branded products. Lip Clarity is a liquid sold in five-milliliter bottles, while SIMPLY-branded products are semi-solids that are sold in lip-balm tubes and similar packaging. While Lip Clarity can be applied directly to the lips, Nutraceutical recommends that its users first mix Lip Clarity with a carrier oil. As Lander explained:

> If [someone] had a particularly painful sore on the lips or genital area, they might find the tingling sensation of the product a little too strong. They could put [Lip Clarity] in a little bit of carrier oil or lotion or even an existing lip product they had. *They could make a salve or lip balm and put some in it*. And then they could use that on the genitals or the lips to help, you know, *alleviate that pain of application*.

(emphasis added). Of course, it makes sense to mix Lip Clarity with other substances because it is in liquid form and sold by the teaspoon. Consumers may also mix Lip Clarity with other substances to disguise the fact that they are treating herpes sores. In contrast, SIMPLY-branded products are meant to be applied directly to the lips, without the use of carrier oils, and there is no evidence that there is any stigma associated with the use of SIMPLY-branded products.

Despite much hemming and hawing, Lander admitted that Lip Clarity is not a lip balm, at least as that term is typically used. As Lander testified, if a consumer wanted to use Lip Clarity like a lip balm, the consumer would "*need to buy from somewhere else* a bees wax or soy wax or similar type of wax to get it to that thickness or consistency that would be most similar to the

thickness or consistency [of] a classic . . . Chapstick or lip balm." (emphasis added). The price difference between the parties' products is also significant. Lip Clarity retails between $7.39 and $13.19 per bottle, while SIMPLY-branded products retail between $0.99 to $2.99. It is extremely unlikely that a consumer who walks into stores to buy Lip Clarity (or any other Nutraceutical product) is instead going to walk out with a tube of lip balm or lip gloss.

Second, as to similarity in the manner of marketing, Lip Clarity and SIMPLY-branded products are marketed to different consumers. While both parties emphasize the fact that their products are made from natural ingredients, Lip Clarity, prior to 2013, was marketed towards those who suffer from cold sores and herpes sores. Lip Clarity is no longer explicitly marketed for this purpose, but Lander's testimony suggests that it is still predominantly used by those who suffer from such conditions. Even today, Lip Clarity is geared towards consumers who use essential oils for therapeutic purposes: Nutraceutical markets its products in an Aromatherapy Guide, and according to Lander, "there's literally hundreds" of medical practitioners who use Nutraceutical essential oils in their practice.

SIMPLY-branded products are marketed towards label readers and impulse buyers. While Nutraceutical and AN may both target label readers generally, it is unlikely that the label readers targeted by both companies overlap. There is no SIMPLY-branded product that makes reference to its ability to treat cold sores or herpes sores, so it is unlikely that label readers are comparing Lip Clarity to SIMPLY-branded products. Moreover, SIMPLY-branded products are found at end-cap displays and check-out aisles, while Lip Clarity is typically found next to other organic products in the aromatherapy section of a store. In fact, Nutraceutical recommends that retailers place its products with other "aromatherapy products or near other fragranced products."

Thus, no reasonable juror could conclude that SIMPLERS BOTANICALS-branded products, Lip Clarity included, are similar to SIMPLY-branded products. There is almost no similarity between both parties' products or marketing apart from the fact that both can be applied to the lips. The dissimilarity between the products and marketing weighs heavily against a finding of likelihood of confusion.

### d. Degree of Consumer Care

"Consumers are generally more careful when purchasing expensive products." *Icon Health & Fitness, Inc. v. Nautilus Grp., Inc.*, 1:02-cv-00109-TC, 2004 WL 6031124, at *5 (D. Utah Dec. 21, 2004). For instance, a consumer is likely to exercise more care—reviewing the relevant information and comparing brands—when buying a $1,000 treadmill. *Id.*

As noted above, the price of Lip Clarity ranges from $7.39 to $13.19, and the price of SIMPLY-branded products ranges from about $0.99 to $2.99. Nutraceutical argues that the relatively low price of the parties' products supports the conclusion that there will be a low degree of consumer care. But the Court is not convinced.

The price of Lip Clarity may seem low at first blush, but a small amount, five-milliliters, costs at least $7.39. Consumers presumably purchase Lip Clarity on an ongoing basis, unlike the one-off purchase of a treadmill or car. As the TTAB suggested, consumers will likely exercise more care when purchasing health products. *See In re Liquivita, LLC*, No. 86265014 (T.T.A.B. May 20, 2016) (unpublished) ("[W]e simply cannot find that 'multivitamin dietary food supplement[s]' are impulse buys."). Therefore, despite the $7.39 sticker price, it is likely that a consumer who is looking for an essential oil to treat their cold sores or herpes sores is going to review the information presented about the product, compare brands, and seek the most benefit

related to their need. Notably, Nutraceutical does not present any evidence as to how much care consumers actually exercise when purchasing either parties' products.

While SIMPLY-branded products may be more properly characterized as "impulse buys," it is unlikely that consumers are making these impulse buys at the expense of Lip Clarity sales, or sales of other Nutraceutical essential oils. The parties' products are too dissimilar. Thus, although the increased consumer care does not necessarily eliminate the likelihood of confusion, it does weigh against a finding of likelihood of confusion in this case.[7]

### e. Strength of the Mark

The Court must assess the conceptual strength and commercial strength of the SIMPLERS mark. *Icon Health & Fitness, Inc. v. Nautilus Grp., Inc.*, 02-CV-00109-TC, 2004 WL 6031124, at *5 (D. Utah Dec. 21, 2004). The commercial strength of a mark turns on "the marketplace recognition value of the mark." *King of the Mt. Sports*, 185 F.3d at 1093 (citing 3 J. Thomas McCarthy, *McCarthy on Trademark and Unfair Competition* § 11:83 (4th ed. 1996)). "If a mark has been long, prominently and notoriously used in commerce, there is a high likelihood that consumers will recognize it from its prior use." *Virgin Enters. v. Nawab*, 335 F.3d 141, 148 (2d Cir. 2003).

"The more distinct a mark, the more likely is the confusion resulting from its infringement." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). Put simply, "[a] strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other

---

[7] Even if consumers exercised a low degree of care, as Nutraceutical suggests, this would not give rise to a genuine dispute as to likelihood of confusion in this case. *See Universal Money Ctrs.*, 22 F.3d at 1533 (holding that low degree of consumer care did not give rise to genuine dispute as to likelihood of confusion).

parties." *Universal Money Ctrs.*, 22 F.3d at 1533 (quoting *Exxon Corp. v. Texas Motor Exch.*, 628 F.2d 500, 504 (5th Cir. 1980)).

The parties dispute whether the SIMPLERS mark is fanciful, suggestive, or descriptive. Nutraceutical contends that the mark is fanciful because it does not exist in the English language. To assess the conceptual strength of a mark, courts classify marks into five categories, in ascending order of relative strength: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Icon Health*, 2004 WL 6031124, at *5.

"A descriptive mark identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients" (*e.g.*, SEATTLE'S BEST COFFEE). *Sally Beauty Co.*, 304 F.3d at 976. "A descriptive mark may receive protection 'only when it has acquired a secondary meaning by becoming distinctive of the applicant's goods in commerce.'" *Id.* (quoting *Beer Nuts*, 711 F.2d at 940). "Suggestive marks 'suggest[] rather than describe[] a characteristic of [a] product and require[] the consumer to use imagination and perception to determine the product's nature'" (*e.g.*, COOPERTONE, MICROSOFT, NETSCAPE). *Id.* (quoting *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 655 (10th Cir. 1996)). "Arbitrary marks use common words, symbols, and pictures that do not suggest or describe any quality or characteristic of the goods or services (*e.g.*, APPLE). *Id.* (citing *King of the Mt. Sports*, 185 F.3d at 1093). "[F]anciful marks are words invented or selected for the sole purpose of functioning as a trademark" (*e.g.*, XEROX, KODAK, CLOROX, EXXON). *Id.*

Here, despite Nutraceutical's claim that SIMPLERS is fanciful, the mark is, at best, suggestive. SIMPLERS is not an "invented" word, like XEROX or KODAK, because it is an English word, simpler, with an "s" added to the end. BOTANICALS, as it is used with the SIMPLERS mark, describes a characteristic of the products, that they are plant-based, suggesting

that mark may be descriptive. But the SIMPLERS component does, to some extent, suggest (rather than describe) that the products may be made from simple ingredients, although this is due mostly to the uncertainty as to what SIMPLERS is supposed to communicate. *Cf. Icon Health*, 2004 WL 6031124, at *6 (holding that SOFT STRIDER is a suggestive mark because the "consumer must use imagination to connect the mark with treadmills, as opposed to some other product related to walking or running"). Nutraceutical also has evidence that the mark enjoys moderate commercial success. Thus, the Court concludes that the SIMPLERS mark is suggestive and that it enjoys moderate commercial success.[8]

The fact that the SIMPLERS mark is suggestive and enjoys moderate commercial success does not weigh for or against a likelihood of confusion. The weight afforded to the strength-of-the-mark factor varies based on whether the marks in question are similar. *Cf. GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000) ("[When] the appearance of the conflicting marks and the services provided are almost identical, 'the strength of the mark is of diminished importance in the likelihood of confusion analysis.'" (quoting *Brookfield Commc'ns., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1059 (9th Cir. 1999)). For instance, the fact that a mark is fanciful (*e.g.*, KODAK) does not, in and of itself, support a likelihood of confusion if the other mark in question is dissimilar (*e.g.*, CANON). Here, even assuming that the SIMPLERS mark is strong, it is dissimilar from the SIMPLY mark; and thus the strength of the SIMPLERS mark is not necessarily indicative of a likelihood of confusion. Accordingly, the Court concludes that the

---

[8] Nutraceutical sold $5,923,143.00 in "SIMPLER-branded products" between September 20, 2013 and July 31, 2016. Nutraceutical's selling, general, and administrative expenses for the same period, which presumably includes the company's advertising expenses, were $1,859,393.00. Because Nutraceutical has no evidence as to whether consumers recognize the mark based on prior use, the conclusion that the mark enjoys moderate commercial success is generous but appropriate for summary judgment.

strength of the SIMPLERS mark does not weigh for or against a likelihood of confusion in this case because the marks in question are dissimilar.

### f. AN's Intent in Adopting the SIMPLY Mark

Nutraceutical concedes that AN did not intend to infringe on the SIMPLERS mark, and there is no evidence that AN intended to infringe on the SIMPLERS mark. This weighs against a likelihood of confusion.

### g. Summary Judgment is Appropriate

As noted above, likelihood of confusion can be amendable to summary judgment. *Universal Money Ctrs.*, 22 F.3d at 1536. Indeed, the Court has the authority "to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination of whether there is a likelihood of confusion." *Sally Beauty Co.*, 304 F.3d at 971. The Court has taken care to review the relevant Tenth Circuit case law to discern the outer limits of substantial similarity, and it has determined that this case does not need to be submitted to a jury for a factual determination as to likelihood of confusion.

The Tenth Circuit has affirmed grants of summary judgment on the issue of likelihood of confusion based on facts that are more compelling than those in the case at hand. In *Universal Money Centers*, the plaintiff offered a debit card with the mark UNIVERSAL MONEY and the defendant offered a telephone and retail credit card with the mark UNIVERSAL. 22 F.3d at 1538. In *Heartsprings*, both parties used extremely similar marks: HEARTSPRINGS and HEARTSPRING. 143 F.3d at 552-53. There, the plaintiff produced printed materials designed to educate children, and the defendant ran a residential school for physically disabled children and an outpatient program that provided parents with informational pamphlets on children's educational rights. *Id.* In both cases, the Tenth Circuit affirmed the district court's grant of

summary judgment on the issue of likelihood of confusion. *See also Coherent, Inc. v. Coherent Techs., Inc.*, 935 F.2d 1122, 1125 (10th Cir. 1991) (district court did not err in finding no likelihood of confusion although parties manufactured related laser products, sold to the U.S. government, and listed products in the same buyers' guide).

Here, summary judgment is appropriate. None of the factors suggest a likelihood of confusion. There is no evidence of actual confusion, and the marks in question are dissimilar, especially when SIMPLY is compared to SIMPLERS BOTANICALS. Even more importantly, the parties' products are almost nothing alike. Nutraceutical has no evidence that its products compete with SIMPLY-branded products in the marketplace, and it only speculates as to how consumers perceive its products in comparison to SIMPLY-branded products. No reasonable juror could conclude that AN's use of the SIMPLY mark is likely to give rise to consumer confusion.[9] Accordingly, Nutraceutical has failed to show that AN's use of the SIMPLY mark infringed the SIMPLERS mark.

---

[9] Throughout its Opposition, Nutraceutical contends that AN admitted that there is a likelihood of confusion. Nutraceutical points to AN's counterclaims, in which AN *alleges* that the "designation 'SIMPLERS'" is "almost identical to [AN's] SIMPLY mark" and to AN's *allegations* in the TTAB proceeding that the SIMPLERS mark resembles the SIMPLY mark such that it would be "likely to cause confusion, mistake or deception." However, Nutraceutical misunderstands the effect of AN's allegations. All of the cases cited by Nutraceutical on this point deal with admissions made in *an answer*, not allegations in a counterclaim. Under Rule 8(d)(3), "[a] party may state as many separate claims or defenses as it has, *regardless of consistency*." And the entire purpose of summary judgment is to "*pierce the pleadings* and to assess the proof in order to see whether there is a genuine need for trial," 1937 Advisory Committee Notes, Fed. R. Civ. P. 56. Nutraceutical also ignores the fact that AN, to the extent it was required to do so, denied that there was a likelihood of confusion in paragraph 27 of its amended answer. Thus, AN's inconsistent allegations do not constitute a judicial admission on the legal issue of likelihood of confusion. *See* Michael H. Graham, Handbook of Federal Evidence § 801:26 ("[A]n admission in one alternative in the pleadings in the case does not nullify denial in another alternative as a matter of pleading."). With respect to AN's allegations made in the TTAB proceeding, AN clarified at oral argument that its allegation as to likelihood of confusion was made in response to Nutraceutical's overbroad registration statement, in which it indicated that the SIMPLERS mark was used on lip balms and lip salves, neither of which have

## IV.    CONCLUSION AND ORDER

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment (ECF No. 53) is GRANTED. AN's use of the SIMPLY mark does not give rise to a likelihood of consumer confusion as to the source or sponsorship of the parties' goods, and therefore AN has not infringed the SIMPLERS mark. It is ORDERED that Defendant is entitled to judgment in its favor on Plaintiffs' claims for trademark infringement, false advertising, declaratory relief, and trademark cancellation. The only claim that remains is Defendant's counterclaim for declaratory relief.

DATED October 10, 2017.                                                            .

_____
Judge Jill N. Parrish
United States District Judge

---

been borne out by discovery. Nutraceutical also ignores the fact that the likelihood of confusion analysis differs when SIMPLY, as opposed to SIMPLERS, is the basis of the infringement claim.